IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ELIZABETH ENGLE,**

      Plaintiff,

**v.**                                                          **CIVIL ACTION NO.: 3:19-CV-101
(GROH)**

**CARRINGTON MORTGAGE SERVICES, LLC,**

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING CARRINGTON MORTGAGE SERVICES, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Currently pending before the Court is a Motion for Summary Judgment filed by Carrington Mortgage Services, LLC ("Carrington") on June 19, 2020. ECF No. 56. The Court has reviewed the Motion, Plaintiff's Response in Opposition [ECF No. 72] and Carrington's Reply. ECF No. 87. Also pending before the Court is a Motion to Strike a portion of Carrington's memorandum for exceeding the page limitation set forth in LR Civ P 7.2(a). ECF No. 83. Carrington filed a Response in Opposition. ECF No. 90. Therein, counsel for Carrington argues that the Plaintiff waived any objection when she filed her Response nearly two weeks prior to the Motion to Strike. Further, Carrington includes a request for leave to file its memorandum in excess of 25 pages.

The Motion to Strike [ECF No. 83] is **DENIED**, as the Court finds that the Plaintiff waived her objection when the Motion was untimely filed. Carrington's memorandum

does exceed 25 pages. However, based upon the arguments in Carrington's Response, the Court finds good cause to grant its request for leave to exceed the page limitation in Rule 7.2. Counsel for Carrington is strongly cautioned to adhere to this Rule and seek permission of the Court in advance of filing any future motions. Failure to do so likely will result in any excess pages being stricken.

## I. BACKGROUND

Prior to Carrington's Motion for Summary Judgment, the Plaintiff, Elizabeth Engle ("Ms. Engle") voluntarily dismissed Counts I and III, and the Court dismissed Counts II, IV, and VI. See ECF No. 37 at 21. Thus, the only remaining count for this Court's consideration is Count V, which alleges violations of Regulation X. Specifically, Ms. Engle alleges Carrington violated various subsections of 12 C.F.R. § 1024.41. The factual and procedural background prior to the Court's Order granting Carrington's motion to dismiss in part remains unchanged and is included herein by reference.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. SECTION 1024.41 OF REGULATION X

Section 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." Section 1024.41(b)(1) requires servicers to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Section 1024.41(c)(1)(i) requires a servicer to "[e]valuate the borrower for all loss mitigation options available to the borrower." Section 1024.41(c)(2)(ii) permits a servicer, in its discretion, to evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option.

## IV. THE PARTIES' CONTENTIONS

In Count V of her Complaint, Ms. Engle alleges that Carrington violated Section 1024.41(b)(1) by failing to exercise reasonable diligence in obtaining documents and information from Plaintiff to complete her loss mitigation application; violated Section 1024.41(c)(1)(i) by failing to evaluate her completed loss mitigation application for all loss mitigation options available to her; and violated Section 1024.41(c)(2)(ii) by failing to review Ms. Engle's loss mitigation application for available options in its discretion.

In its Motion for Summary Judgment, Carrington asserts that the evidence of record demonstrates that it fully complied with Regulation X.  Indeed, Carrington takes the position that the instant action is an attempt by Ms. Engle "to shift blame to Carrington for her own delays in timely obtaining authorization as a non-borrower to request mortgage assistance and submit all required documents." ECF No. 57 at 2.  In sum, Carrington avers that it did nothing wrong, and Ms. Engle's alleged damages "arise from her own failure to timely comply with the Divorce Decree and/or Mr. Yates['s] 'refusal' to add her as an authorized user on the Loan account . . . ." Id. at 14.

The thrust of Ms. Engle's response is had Carrington allowed her "to enter into a loan modification during the summer of 2019, all of [her] damages would have been mitigated or avoided altogether.  Carrington's failure to follow RESPA caused Ms. Engle to be denied an assumption and loan modification to which she was entitled, and Carrington is responsible for her damages as a result." ECF No. 72 at 9.

## V. DISCUSSION

The property at issue in this case was procured by Ms. Engle's former husband, Mark Yates, to whom she was married at the time.  Mr. Yates financed the purchase of

4

the property solely in his name, and the loan and deed of trust were also in his name alone.  To be clear, Ms. Engle was not a party to the purchase, and she was not on the promissory note or the deed.  Carrington began servicing Mr. Yates's loan in or around October 2015.

In November 2017, Ms. Engle divorced her then husband, Mr. Yates.  The family court of Berkeley County, West Virginia, entered a final divorce decree on November 13, 2017.  ECF No. 56-2.  Therein, the family court ordered that Ms. Engle

> shall be granted sole possession and ownership of the residence . . . ; **[she] shall be solely responsible for the mortgage payments**, insurance, taxes, and expenses associated with said residence, holding [Mr. Yates] harmless on same; **[she] shall refinance and/or otherwise remove the Respondent's name from said residence within one (1) year**, <u>or said residence shall be sold</u> and [Ms. Engle] shall be solely responsible for any deficiency judgment or receive any net profits.

ECF No. 56-3 at 7–8 (emphasis added).

Although it was Ms. Engle's responsibility and obligation to make payments toward the property's loan, she concedes that she stopped making payments around July 2018.  ECF No. 56-4 at 20 & 35.  The family court further ordered Ms. Engle to refinance or otherwise *remove Mr. Yates name* from the residence by November 13, 2018.  However, Mr. Yates did not provide a written authorization for Carrington to speak with Ms. Engle about the account until December 2018.  It is patently clear, according to Ms. Engle's testimony and the exhibits before the Court, that Ms. Engle's contempt of the family court order occurred prior to Carrington allegedly committing any violation or even being authorized to speak to her about the account.

Ms. Engle alleges that Carrington violated Section 1024.41(b)(1) by failing to exercise reasonable diligence in obtaining documents and information to complete her

5

loss mitigation application. Carrington confirmed Ms. Engle as a successor in interest on March 7, 2019, within 30 days of being provided a recorded deed and Ms. Engle's photo identification. See ECF No. 56-2 at 2–14 & 240–44. Carrington regularly communicated with Ms. Engle about her application status. ECF No. 56-4 at 67–68.

On March 14, 2019, Ms. Engle sent Carrington an incomplete loss mitigation application. Four of the five pages were not executed, and some documentation was missing or outdated. ECF No. 56-4 at 65–68; See ECF No. 56-2 at 2–14. The next day, Carrington sent Ms. Engle a letter notifying her that the application was incomplete. Ms. Engle testified that she understood the instructions and document requests in this letter. ECF No. 56-4 at 65. Ms. Engle further spoke with Carrington by phone on March 18 and 19, 2019, about her application. ECF No. 56-2 at 11. Ms. Engle submitted the additional executed pages, which Carrington received around March 20, 2019. ECF No. 56-5 at 95.

Importantly, Ms. Engle's initial application and request for assistance only sought to modify the loan; it was not a request for an assumption. See ECF No. 56-4 at 68–69. The same day, Carrington mailed Ms. Engle a letter providing her with payment options and an assumption application package. ECF No. 56-4 at 69–71. On April 4, 2019, someone from Carrington advised Ms. Engle that her new application had missing portions and documents. ECF No. 56-4 at 74–75; see also ECF No. 56-2.

About a week later, around April 10, 2019, Ms. Engle submitted a request for mortgage assistance form executed jointly with her new husband, Mr. Swain. See ECF No. 56-2 at 272–282. On April 16, 2019, Carrington instructed Ms. Engle that it needed documentation from Mr. Swain if they intended to submit a joint application. ECF No. 56-4 at 78–79. After additional phone calls and letters between the parties, Carrington

considered Ms. Engle's application complete on May 6, 2019. The next day, Carrington provided confirmation that Ms. Engle's application was complete by telephone. ECF No. 56-2 at 13. Ms. Engle filed this Civil Action two days later. See ECF No. 1.

Carrington notified Ms. Engle that it needed additional documents again on May 9, 2019, and May 24, 2019. ECF No. 56-2 at 298–301 & 307–310. On June 28, 2019, Carrington mailed several documents to Ms. Engle, including a successor in interest assumption agreement, an assumption agreement, and a loan modification agreement. See ECF No. 56-2 at 316–52. Ms. Engle and Mr. Swain executed and returned some of the documents; however, Ms. Engle's ex-husband, whose signature was required, did not sign any of the documents. See ECF No. 56-2 at 354–62. Ms. Engle claims this was not a rejection; however, it is clear to the Court that Ms. Engle did not agree to the terms offered by Carrington and attempted to create her own terms, which she sent back to Carrington. Thus, Ms. Engle rejected Carrington's offer.

Ultimately, Carrington did not receive Ms. Engle's completed application, as described by Regulation X, until June 6, 2019. See ECF No. 57 at 5. Carrington sent Ms. Engle documents to execute for an assumption on June 28, 2019. The arrangement was not agreeable to Ms. Engle,[1] so the documents were not fully executed. Now, Ms. Engle seeks to hold Carrington in violation of Regulation X.

Ms. Engle fails to establish that Carrington did not exercise reasonable diligence in obtaining documents and information to complete her application. Indeed, the record is replete with communications between Carrington and Ms. Engle. Even in the midst of applying, when Ms. Engle decided to add a co-applicant (her new husband), Carrington

---

[1] See, e.g., ECF No. 72 at 23. As stated in her Response, "if Carrington had . . . offered her an assumption . . . in a form that she could accept, Ms. Engle would not be facing foreclosure . . . ").

7

continued to assist her in completing the appropriate paperwork in order to submit a complete application. That Mr. Swain or Ms. Engle had to resubmit tax forms or other documents that were unexecuted, improperly filled out, rejected by the IRS or had become outdated is not in violation of Regulation X; it is the opposite.

Ms. Engle has failed to provide any legal or factual basis to establish that Carrington failed to exercise reasonable diligence in reviewing her application in violation of Regulation X.

Ms. Engle further claims Carrington failed to evaluate her completed loss mitigation application for all loss mitigation options available to her, in violation of Section 1024.41(c)(1)(i). The real issue here is Ms. Engle's rejection of Carrington's assumption arrangement—specifically that Mr. Yates was required to sign the documents. The Court notes that this appears problematic for Ms. Engle because the family court's order required her to remove Mr. Yates from the loan.

Ms. Engle claims that Carrington did not properly "[e]valuate [her] for all loss mitigation options available . . . ." § 1024.41(c)(1)(i). Ms. Engle's basis for this assertion is that "Carrington could have, and should have, offered a loan modification that did not require participation by Mark Yates." ECF No. 72 at 18. First, Section 1024.41(c)(1)(ii) makes it clear that although a servicer must evaluate a borrower for all loss mitigation options available, that does not mean it must offer *every option it considered*—or any option at all.

Further, as Carrington noted in its Reply, 7 C.F.R. § 3555.256(b) provides,

(1) The lender must obtain Agency approval before consenting to a transfer with an assumption of the outstanding debt.

8

> (2) Rural Development may approve a transfer with an assumption of the outstanding debt if the following conditions are met:
>
>> (i) The transferee must assume the entire outstanding debt and acquire all property securing the guaranteed loan balance; <u>however, the transferor must remain personally liable</u>. The transferor must pay any recapture as a result of interest subsidy granted, if applicable, owed at the time of the transfer and assumption.

(emphasis added). Thus, contrary to Ms. Engle's suggestion, Carrington's inclusion of Mr. Yates was <u>required</u> under this regulation. Nonetheless, even if it were not required, Ms. Engle's assertion is not backed by any evidence. That Carrington only offered one loss mitigation option is not evidence that it failed to consider her for all options. Under the regulatory framework, Carrington has discretion to determine which option(s), if any, it offers an applicant. Accordingly, Ms. Engle's arguments that Carrington violated Section 1024.41(c)(1)(i) are of no moment.

Although it may have been a "difficult process" for Ms. Engle to submit a completed loss mitigation application, as our sister District noted in <u>Hanson v. Amerihome Mortg. Co., LLC</u>, No. 2:17-CV-03691, 2018 WL 5928369, at *3 (S.D. W. Va. Nov. 13, 2018), the regulations are clear that an application is not complete until "a servicer has received <u>all the information that the servicer requires from a borrower</u> in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1) (emphasis added).

The undisputed evidence in this case is that Carrington maintained contact and regularly worked with Ms. Engle to get the paperwork it needed to review her application—which it ultimately did. Carrington never scheduled a foreclosure during the relevant time period, even though Ms. Engle admittedly quit making payments on the note, in violation

9

of the family court order.  Therefore, the Court concludes that Carrington did not violate Regulation X regarding its handling of Ms. Engle's application.

Assuming *arguendo* Carrington had violated Regulation X, the Court finds that Ms. Engle's alleged damages were not caused by Carrington.  Specifically, Ms. Engle claims substantial damages as a result of Carrington's regulatory violations.  She contends that Carrington is responsible for her "incurring substantial arrearage on the loan, being held in contempt of court, having to pay large sums of money for a family court attorney, having to place her home on the real estate market, and suffering stress, anxiety, annoyance, and inconvenience, as a result of the unnecessarily protracted and incorrectly evaluated loss mitigation process."  ECF No. 72 at 10.

Ms. Engle stopped making payments on the loan in July 2018.  When asked about this in her deposition, Ms. Engle testified,

> I stopped making payments on the mortgage because I - - - I was trying to contact - - - I was trying to contact Carrington, and it was - - - I was getting the run around.  I had reached out to lenders and was unable to do - - - I was unable - - - I was told I was unable to do what I was trying to do.  And I was worried that if - - - if it was going to be foreclosed on, I would need to find some place for my family to live, so - - - .

ECF No. 56-4 at 35.

Ms. Engle decided to stop making payments to Carrington.  Ms. Engle's decision—several months before Mr. Yates provided authorization for her to even speak with Carrington—was in contempt of the family court's order.  Ms. Engle spent months seeking financing through other lenders to satisfy the family court's order. She was unsuccessful. Then, after the family court's one-year deadline lapsed, Ms. Engle really began working with Carrington for assistance—months after she stopped making payments and was unable to finance the property through another lender and once Mr. Yates's credit was

already damaged. Ms. Engle could have sold the property prior to the family court order's deadline, but again, she chose not to do so. Ms. Engle certainly had the right to chose how to handle the situation she found herself in, but she cannot now seek to hold Carrington liable for her decisions and the actions of others.

While the Court is sympathetic to Ms. Engle's plight, the evidence of record is clear that her damages were not caused by or even attributable to Carrington. From a legal standpoint, Carrington simply is not responsible for Ms. Engle's claimed damages. These alleged damages are instead traceable to Ms. Engle's decisions, Mr. Yates's conduct, or the allegedly unlawful[2] actions of the family court of Berkeley County.

When a plaintiff fails to demonstrate a causal link between the alleged violation and damages, summary judgment in the defendant's favor is proper. See Malcolm v. Seterus, Inc., No. 5:18-CV-01937, 2020 WL 1434496, at *5 (N.D. Ohio Mar. 24, 2020) (finding no evidence that the alleged damages are causally related to the defendant's supposed violation). Thus, even assuming Carrington violated Regulation X, summary judgment remains appropriate because Ms. Engle's damages were not proximately caused therefrom.

## VI. CONCLUSION

In sum, the Court, having reviewed the parties' filings and exhibits, concludes that Carrington did not violate Regulation X, and even if it had, any violation was not the basis for her alleged damages. Finding no genuine dispute as to any material fact and that Carrington is entitled to judgment as a matter of law, Carrington's Motion for Summary

---

[2] Ms. Engle temporarily lost custody of her children as a sanction for contempt of court for failing to comply with the family court's order. At her deposition, Ms. Engle testified that the attorney she hired to represent her in family court argued to the family court that it was unlawful to take Ms. Engle's children as a sanction. ECF No. 56-4 at 102.

11

Judgment is **GRANTED**.  ECF No. 56.  Having granted Carrington's Motion, no counts remain in Ms. Engle's Complaint.  Therefore, Ms. Engle's complaint is **DISMISSED**.

The Clerk of Court is **DIRECTED** to **TERMINATE** any outstanding motions and to remove this Civil Action from the Court's active docket.  The Clerk is further **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: August 5, 2020

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE